IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERT W. GAINES, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | CV 04-6121-KI | |
| v. ) | | |
| ) | | |
| JO ANNE B. BARNHART, Commissioner of ) | OPINION AND ORDER | |
| Social Security, ) | | |
| ) | | |
| Defendant. ) | | |

KATHRYN TASSINARI
DREW L. JOHNSON
1700 Valley River Drive
Eugene, Oregon 97401

    Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

LUCILLE G. MEIS
Office of the General Counsel
LEISA A. WOLF
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

    Attorneys for Defendant

KING, District Judge:

## INTRODUCTION

Plaintiff Robert Gaines brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for child's insurance benefits and adult supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 USC §§ 405(g) and 1383(c). The Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Gaines filed applications for child's insurance benefits and supplemental security income payments alleging disability beginning at birth, due to psychological impairments including bipolar disorder, dyslexia, learning disorder and difficulty reading and comprehending.

Gaines met all of the nondisability requirements for child's insurance benefits under 42 USC § 402 until he reached age 22 on March 12, 2000. To prevail on his Title II claim, he must show that he became disabled before that date. 20 CFR §§ 404.350, 404.359. Gaines testified that he received Title II benefits on the account of his deceased father until he reached age 18. Tr. 316.[1] There is no

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer. (Docket # 7).

other evidence in the record regarding this previous application. If Gaines is correct, his current claim is for the period commencing when his payments under the previous application ceased.

Supplemental security income payments cannot be made retroactively. Social Security Ruling (SSR) 83-20. The earliest period for which Gaines could receive payment on his Title XVI claim is the month following the constructive filing date of his application. 20 CFR § 416.501. Gaines filed his application on February 19, 2002.

Gaines was born March 12, 1978. He attended special education classes throughout school and dropped out during the 9th grade. He has worked in a limited capacity, but has never earned sufficient income to be engaged in substantial gainful activity within the meaning of the regulations. *See* 20 CFR §§ 404.1574, 416.974.

## **DISABILITY ANALYSIS**

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 USC § 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a five-step sequential process for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR §§ 404.1520, 416.920. Gaines challenges the third and fifth steps of the ALJ's decision.

At the third step, the ALJ must determine whether the claimant has impairments that meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe

as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41; 20 CFR §§ 404.1520(d), 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments). If the ALJ finds that the claimant's impairments are equivalent to a Listing, the claimant is conclusively presumed to be disabled.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945; SSR 96-8p.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR §§ 404.1520(e), (f), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

The ALJ found that Gaines has "bipolar disorder; borderline IQ due to a learning disorder (verbal); and drug and alcohol abuse present, but not material," which are severe impairments within the meaning of the Regulations. Tr. 25. The ALJ assessed Gaines with the RFC:

> to perform unskilled work utilizing one- to two-step repetitive tasks. He is precluded from interaction with the general public, and from close interaction with co-workers. He is additionally precluded from written instructions.

Tr. 26.

At step five of the sequential evaluation, the ALJ found that Gaines retained the RFC to perform work in the national economy. She identified examples of such work drawn from the testimony of the impartial vocational expert (VE), including sweeper-cleaner, motel cleaner and sedentary assembler. Tr. 27. Accordingly, the ALJ concluded that Gaines was not disabled and is not entitled to benefits under Titles II and XVI of the Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

Gaines contends the ALJ erred at step three of the sequential evaluation by failing to find his impairments equivalent to Listings 12.02 *Organic Mental Disorders* and/or 12.04 *Affective disorders*.

Gaines contends the ALJ failed to accurately assess his RFC because she erroneously discredited the medical source statement of Henry Elder, MD and the lay witness statements of Gaines' mother, Beverly Miller.

Gaines contends the ALJ failed to carry the Commissioner's burden of showing that he is capable of performing work in the national economy because she identified only jobs that require reading and writing abilities that exceed his RFC.

## I. **Listing of Impairments**

The claimant must establish that he meets or equals the criteria for a listed impairment based on medical evidence. *Sullivan v. Zebley,* 493 US 421, 431 (1990); *Tackett v. Apfel,* 180 F3d at 1100; 20 CFR §§ 404.1526, 416.926. The regulations require comparison of "the symptoms, signs and laboratory findings . . . shown in the medical evidence . . . with the medical criteria shown with the listed impairment." 20 CFR §§ 404.1526(a), 416.926(a). In no case will the claimant's description of symptoms be sufficient to establish the presence of a physical or mental impairment. 20 CFR §§ 404.1529(b), 416.929(b); SSR 86-8.

Listing 12.02 requires medical evidence demonstrating a specific organic factor related to the claimant's abnormal mental state "and loss of previously acquired functional abilities." 20 CFR Part 404, Subpart P, Appendix I § 12.02. There is no evidence in the record that Gaines has lost previously acquired functional abilities. His deficits have allegedly been lifelong.

In addition, Gaines cannot show that he satisfies the severity criteria. To do so, he must demonstrate that he satisfies both paragraphs A and B, or paragraph C of the Listing. Paragraph A requires demonstration of a loss of specific cognitive abilities with documented persistence of any

one of seven listed categories of impaired function. One of the seven categories is memory impairment.

Gaines asserts that the findings of Charlotte Higgins-Lee, PhD, establish that his condition is equivalent in severity to Listing 12.02. Dr. Higgins-Lee diagnosed cognitive deficit NOS (not otherwise specified) and learning disorders in reading, arithmetic and written expression. Tr. 161. However, the diagnosis is not sufficient by itself, because it does not include findings that Gaines suffered a loss of cognitive abilities he previously possessed or that he had impaired function in one of the seven listed categories.

Gaines' argument is bolstered by Dr. Higgins-Lee's finding that his Working Memory index on intelligence testing was very low and indicated that he would have difficulties with immediate and working memory. Tr. 159. However, assuming that this demonstrates sufficient memory impairment, it remains unclear how Gaines can satisfy paragraph A without showing any loss of cognitive abilities he once had.

To satisfy the criteria in paragraph B, Gaines must show that the impairment identified in paragraph A results in marked limitation in two of the four major categories for measuring function. Dr. Higgins-Lee opined that Gaines had marked restriction in two: activities of daily living and concentration, persistence or pace. Tr. 161. However, her rating of his functional limitations in activities of daily living assumed that he suffered from a seizure disorder. She indicated that his daily activities are limited, in part, because "he would have difficulty being alone at times" due to his history of seizures. Tr. 164.

Dr. Higgins-Lee based this conclusion on Gaines' report that he has had epilepsy most of his life. Tr. 156. However, there is no medical evidence in the record that Gaines suffers from a seizure

disorder. A claimant must demonstrate the criteria for a Listing through medical evidence and Gaines' subjective report of epilepsy to Dr. Higgins-Lee does not satisfy this requirement.

Similarly, Gaines relies on Dr. Higgins-Lee's medical source statement to demonstrate that he satisfies the C criteria for Listing 12.02. Paragraph C requires a medically documented history of a chronic organic mental disorder with symptoms or signs currently attenuated by medication or psycho-social support. In addition, the claimant must show one of three sets of circumstances that demonstrate a marginal ability to control symptoms. Gaines asserts that he satisfies the following:

> A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate

20 CFR Pt 404, Subpt P, App 1 § 12.02(c)(2).

Dr. Higgins-Lee responded "yes" when asked if these circumstances described Gaines' condition. However, in her explanatory note, she clearly based this conclusion on her assumption that Gaines suffers from epilepsy. She wrote that:

> People with epileptic seizures have a "kindling effect" and can experience brain damage with each seizure. Stress often seems to precipitate seizures.

Tr. 165. Because there is no medical evidence in the record that Gaines has a seizure disorder, this conclusion cannot be used as the basis for satisfying the C criteria for Listing 12.02.

Gaines argues that the ALJ did not articulate legally sufficient reasons to discredit Dr. Higgins-Lee's opinion. However, with respect to her opinion that Gaines' condition meets the B and C criteria, it is clear that she relied on his report of epilepsy. The ALJ properly disregarded those particular findings because they were unsupported by medical evidence.

Gaines' assertion that he is disabled under Listing 12.04 also requires that he demonstrate either both the A and B criteria or the C criteria. The B and C criteria for Listing 12.04 are identical to those for Listing 12.02 and Gaines relies on the same findings by Dr. Higgins-Lee to satisfy them. Dr. Higgins-Lee's findings are insufficient for the reasons discussed above. Accordingly, Gaines has failed to show that his condition meets or equals either Listing 12.02 or Listing 12.04.

## II.  RFC Assessment

Gaines challenges the ALJ's evaluation of the evidence in support of her RFC assessment. He contends the ALJ erroneously discredited the medical source statement of Dr. Elder and the lay statement of Beverly Miller.

### A.  Medical Source Statement

Dr. Elder provided psychiatric care at Linn County Mental Health Services (LCMH). He first examined Gaines in November 2001. Gaines sought treatment for anxiety and because his mother believed he had bipolar disorder. Dr. Elder started Gaines on medication and met with him monthly. Gaines also began therapy sessions at LCMH with Cyndy Wilson, PsyD.

Dr. Elder initially assigned a Global Assessment of Function score (GAF) of 52, indicating moderate symptoms and moderate functioning problems. Tr. 148-49. Clinical measures yielded scores indicating mild depression, mild anxiety, inattention problems consistent with severe attention deficit disorder and hyperactivity difficulties consistent with moderate attention deficit disorder. Other clinical observations supported borderline intelligence, perhaps close to the mentally retarded range, poor recall and a poor fund of knowledge. Tr. 146-47.

In January 2002, Dr. Elder assigned a GAF of 57, indicating mild to moderate symptoms and mild to moderate functioning problems. These included major problems with work-related

functions, no problems with home functioning or social participation and significant problems with personal functioning. Gaines had scores indicating moderate depression, mild anxiety and inattention and hyperactivity in the mild range. Tr. 145.

In March 2002, Dr. Wilson administered a battery of intelligence tests. Gaines achieved Full Scale and Verbal IQ scores in the borderline range and Performance IQ scores in the low average range. Dr. Wilson noted that Gaines scored extremely low on the Working Memory Index, indicating difficulty holding and manipulating information mentally. Tr. 139. The scores are consistent with those obtained later by Dr. Higgins-Lee.

In May 2002, Gaines had a GAF of 57, indicating mild to moderate symptoms and mild to moderate functioning problems with moderate depression and moderate anxiety. Tr. 180.

On May 17, 2002, Dr. Elder prepared a document titled Mental Residual Functional Capacity Assessment, which was similar in format to the familiar Social Security MRFC form, but utilized different definitions to describe the severity of the claimant's impairment. The format of the MRFC form divides four general categories of function into 20 specific work-related abilities and permits a practitioner to rate the severity of a claimant's limitation in each ability.

Dr. Elder indicated that Gaines had severe impairment in a number of the specific work-related abilities, including the ability to understand, remember and carry out detailed instructions; perform activities within a schedule; maintain regular attendance and customary punctuality; complete a normal work schedule without interruptions from psychological symptoms; perform at a consistent pace; and set realistic goals independently. Tr. 289-90.

The MRFC form used by Dr. Elder defined a "severe" impairment as one which precludes the ability to function in the designated area. Tr. 288. In contrast, the regulations define a "severe"

10 - OPINION AND ORDER

impairment as one that has more than minimal impact on the physical or mental ability to work. 20 CFR §§ 404.1520©), 416.920(c).

The ALJ noted that two individuals added narrative commentary on the MRFC form. Handwritten notes that did not appear to be Dr. Elder's indicated that Gaines could not read well enough to use a telephone directory or follow written instructions, could not perform subtraction and experiences angry outbursts. Tr. 21, 291. Handwriting that appeared to be Dr. Elder's noted that "there is a possibility these difficulties may resolve to some degree with treatment." Tr. 291. Beverly Miller testified that the second person was Gaines' counselor, a woman whose name she could not recall. Tr. 354.

Gaines did continue to improve with treatment. In June 2002, Dr. Elder noted that Gaines was 75% compliant with prescribed medication and showed improvement. Dr. Elder assigned a GAF of 66, indicating minor symptoms and minor difficulties in function. Gaines' score on the depression inventory indicated normal mood. His anxiety was mild. Tr. 179.

Gaines asserts that Dr. Elder's MRFC establishes that he is disabled because the VE testified that a hypothetical person who could not perform the abilities Dr. Elder found severely impaired would not be able to work in competitive employment. Tr. 365.

A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 CFR §§ 404.1527, 416.927(d)(2). The ALJ determined that Dr. Elder's MRFC findings were inconsistent with his own contemporaneous treatment records in which he consistently found no more than moderate functional limitations which improved with treatment. Within one

month of completing the MRFC form, Dr. Elder found only minor functional difficulties. Under these circumstances, the extreme limitations indicated on the MRFC are not controlling.

If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002). The ALJ can reject the treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id* at 957 quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989).

The ALJ discounted Dr. Elder's MRFC form because it was not supported by his own contemporaneous records, because it was completed, in part, by another person and because the medical expert (ME) testified that his findings were not an accurate reflection of Gaines' psychological condition as described in Dr. Elder's own contemporaneous records.. Tr. 25. These are legally adequate reasons and are supported by substantial evidence in the record.

Gaines argues that the improvement noted in Dr. Elder's contemporaneous records related only to his mood, and not to his intellectual function. However, there is no evidence suggesting that Dr. Elder's contemporaneous global assessments of Gaines' function did not encompass his entire psychological condition. The ALJ's interpretation of the evidence is based on reasonable conclusions drawn from substantial evidence in the record. The Commissioner's decision must be upheld, even if Gaines offers another rational interpretation. *Andrews*, 53 F3d at 1039-40.

B. <u>Lay Witness Statements</u>

Gaines' mother, Beverly Miller testified that Gaines did not get along with people, stayed at home watching television and playing video games and did not go out unless she was with him. He

has difficulty playing video games without help because he cannot read the instructions given on the screen. The ALJ found that Miller's testimony was not credible because it was contradicted by other evidence in the record.

Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F3d 915, 918 (9th Cir 1993). Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

Miller testified that Gaines has lived with her his entire life. The ALJ noted that Gaines had reported being homeless in 2002. Miller conceded that he had not lived with her at that time, but she could not remember how long he remained homeless. The ALJ then pointed out that Gaines had reported working in Arizona. Miller then testified that he lived with a friend in Arizona for about six months.

Miller testified that Gaines does not go out unless it is with her or her husband. He leaves the house only for medical appointments and to go grocery shopping with her. She was reminded of evidence that Gaines had been camping in the mountains with friends earlier in the year. She then recalled that Gaines goes camping with friends every two to three months.

The ALJ confronted Miller with the above conflicts between her testimony and other evidence of record and she conceded: "My memories are not that good. That's one of the problems that I have." Tr. 344. Miller's faulty memory is germane to the credibility of her testimony and the ALJ's evaluation is supported by substantial evidence in the record. He properly discredited her statements except to the extent they were corroborated by other evidence in the record.

13 - OPINION AND ORDER

In addition, the ALJ's RFC assessment appears adequately to account for the limitations Miller described. The ALJ concluded that Gaines must do work that does not require interactions with the general public, close interactions with co-workers or the ability to read written instructions. This RFC reflects reasonable conclusions the ALJ could draw from Miller's testimony.

In summary, the ALJ's RFC assessment reflects conclusions that the ALJ reasonably reached based on the opinion of Dr. Elder, Miller's testimony and the record as a whole. The ALJ applied the proper standards in evaluating this evidence and her conclusions are supported by substantial evidence.

### III. Work in the National Economy

The ALJ found that Gaines had no past relevant work to which he could return. She properly proceeded to step five of the sequential evaluation. In step five, the Commissioner must show that the claimant can do other work which exists in the national economy. *Andrews v. Shalala*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The assumptions in the hypothetical question must be supported by substantial evidence. *Id.*

Gaines raises two objections to the ALJ's findings in step five. First, he alleges that the hypothetical question did not reflect all of the impairments shown by the medical opinions of Drs. Higgins-Lee and Elder and the lay statements of Miller. This contention cannot be sustained for reasons already described.

Second, Gaines argues that the ALJ improperly relied on vocational testimony that conflicted with the Dictionary of Occupational Titles (DOT). For information about the requirements of work, the Commissioner relies primarily on the DOT, a publication of the Department of Labor. 20 CFR

Part 404, Subpart P, Appendix 2 § 200.00(b); *see also* SSR 00-4p. A vocational expert may be used to provide more specific information about the requirements of particular occupations or the manner in which an occupation is performed in a particular setting. SSR 82-61; SSR 00-4p.

When a VE provides information about the requirements of an occupation, the ALJ has an affirmative duty to determine whether that information conflicts with the DOT and to obtain a reasonable explanation for the apparent conflict. If testimony provided by a VE is inconsistent with information in the DOT, the ALJ must resolve the conflict before relying on the testimony to find that a claimant is not disabled. SSR 00-4p. An ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F3d 1428, 1435 (9th Cir 1995).

Here the VE testified that a hypothetical person with the limitations identified in Gaines RFC assessment would be capable of performing work as a sweeper-cleaner, motel cleaner or sedentary assembler. Tr. 27. Gaines argues that the DOT descriptions of these occupations indicate that they require reading

> Language: Level 1 - Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

Plaintiff's Memorandum, Ex A at 1, Ex B at 2, Ex C at 2.

In accordance with the governing regulations and Social Security Rulings, the ALJ elicited testimony explaining the apparent conflict. The VE explained that, based on her training and experience and a direct inquiry to the Department of Labor, she knew that DOT Language Level 1

describes the maximum reading ability for a range of occupations. The range spans occupations that require no reading up to occupations requiring the maximum reading ability described the DOT.

The VE testified that the three occupations she identified were within the Level 1 range, but did not require reading. The occupations could be performed by someone who is functionally illiterate, but can be shown how to perform a simple sequence of tasks. Tr. 362-64.

The VE's explanation was reasonable and persuasive and the ALJ was entitled to rely on her testimony. Her testimony provided the ALJ with substantial evidence to support the conclusion that Gaines' inability to read would not preclude work in these occupations.

## **CONCLUSION**

Based on the foregoing, the ALJ's decision that Gaines does not suffer from a disability and is not entitled to benefits under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this ___3rd___ day of June, 2005.

       /s/ Garr M. King
      Garr M. King
      United States District Judge